47 CCPA

**REX SHOE COMPANY, Inc.**

v.

**JUVENILE SHOE CORPORATION OF AMERICA.**

Patent Appeal No. 6421.

United States Court of Customs and Patent Appeals.

Dec. 21, 1959.

Mason, Fenwick & Lawrence, Boynton P. Livingston, G. Cabell Busick, Washington, D. C. (Peck & Peck, Allen E. Peck, Washington, D. C., of counsel), for appellant.

Kingsland, Rogers & Ezell, St. Louis, Mo. (Edmund C. Rogers, St. Louis, Mo., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and JOHNSON (retired), Judges.

RICH, Judge.

The sole issue here is whether the Patent Office correctly held that registration of the trademark "Thrill-mates" for "women's and children's shoes" is proscribed by Sec. 2(d) [1] of the Lanham Act (Trade-Mark Act of 1946) in view of the opposer's prior registration and use of "Foothrills" as a trademark for "Shoes and Slippers of Leather or Kid."

The facts are concisely summarized and the reasons supporting the decision below are clearly stated in the opinion of the Assistant Commissioner, acting for the Commissioner, from which we quote as follows (114 USPQ 545):

"The record shows that since 1950, both parties have had substantial national sales of shoes under their respective marks through the same types of retail outlets, and both have advertised shoes under their marks in the same trade periodicals and in newspapers under their dealer cooperative programs. Opposer's shoes sold under its mark are professional and casual shoes, and applicant's are casual and sport shoes. The shoes of both parties are sold to the same average purchasers.

"There is nothing in the record to aid in determining probability of confusion, so it becomes necessary to attempt an evaluation of the prob-

---

1. Sec. 2(d) provides, with certain specified exceptions, that no trademark shall be registered if it "consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of applicant, to cause confusion or mistake or to deceive purchasers." 15 U.S.C.A. § 1052(d).

able associations and reactions in the minds of average purchasers when they encounter applicant's trademarked shoes in the retail outlets under the usual market conditions. Since opposer entered the field with its mark first, and since the average purchasers of the shoes of the parties are the same, it must be assumed that such average purchasers are familiar with opposer's mark, 'Foothrills'. Are they likely, when they see or hear applicant's mark 'Thrill-mates', to associate it with opposer's 'Foothrills' shoes and to assume that both trademarked shoes are in the line of a single company? 'Thrill' is a rather unusual word to use in connection with shoes, and it is therefore likely to remain in the minds of women shoe buyers. It is believed probable, therefore, that a portion of the buying public familiar with the mark 'Foothrills' will associate 'Thrill-mates' with it. This is a type of confusion envisaged by the draftsmen of the statute.

"Although some doubt is created by a record which shows that applicant's unit sales have been substantially greater than opposer's during the period of concurrent use of the marks, it is not sufficient to resolve the controversy in applicant's favor."

Appellant takes issue with the above and argues that the marks, when viewed in their entireties, do not look alike, sound alike, or have the same meaning; that despite extensive advertising in the same trade publications and newspapers and extensive sales of shoes through the same retail outlets, there is no evidence of actual confusion of any kind; that the word "thrill" is an ordinary dictionary word in common use as a part of several trademarks for various products, including shoes, and is entitled to limited protection; and that when an applicant has built up substantial goodwill in a market, its rights are entitled to consideration in an opposition proceeding such as this.

Whether marks are likely to cause confusion or mistake or deceive average purchasers is, in final analysis, a matter of opinion. Both of the tribunals in the Patent Office held that concurrent use of the instant marks would be likely to cause confusion as to origin of the goods.

While it is obvious that the marks, which have the word "thrill" in common, have differences in spelling, pronunciation, appearance, and meaning, we do not feel these are sufficient to obviate the possibility of confusion as to origin. The word "Thrill" in appellee's mark is, as the Commissioner said, "a rather unusual word to use in connection with shoes." The other parts of the marks have little, if any, trademark significance, that is to say they would not tend to indicate origin. "Foot" is quite descriptive of shoes and shoes are sold in pairs, the shoes of each pair being "mates." "Thrill" is, therefore, the significant portion of each mark and entirely arbitrary when applied to shoes, notwithstanding it is a common English word.

The issue here is not likelihood that purchasers would confuse *the marks* on the basis of side-by-side comparison. We think it is reasonable to say that average purchasers of shoes may be confused as to *the origin of the goods* where the two marks here involved are applied to similar shoes. It is, in our opinion, of little or no significance that opposer has produced no evidence of actual confusion.

We think concurrent use of the instant mark would be likely to result in at least some confusion as to origin. We must, therefore, affirm the decision below.

Affirmed.

WORLEY, C. J., and JOHNSON, J., dissent.

MARTIN, Judge (concurring).

In my opinion, this case is one which raises some doubt as to whether concur-

rent use of the instant marks would result in confusion as to origin. Any such doubt must be resolved against the newcomer, and for this reason only I join in the affirmance.